UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DAVID KENNETH CHRISTIAN,   CIVIL NO. 06-3056 (ADM/JSM)

    Petitioner,

v.   REPORT AND RECOMMENDATION

LYNN DINGLE,

    Respondent.

JANIE S. MAYERON, U.S. Magistrate Judge

This matter is before the undersigned United States Magistrate Judge on Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254 [Docket No. 1]. Respondent has filed an Answer to Petition for Writ of Habeas Corpus [Docket No. 4], and Petitioner filed a Habeas Corpus Reply [Docket No. 9]. This matter was decided on the submissions of the parties.

This matter has been referred to this Court for a Report and Recommendation pursuant 28 U.S.C. § 636 (b)(1)(B) and Local Rule 72.1(c).

The Petitioner appears by Beau D. McGraw, Esq.; Respondent appears by Kimberly Parker, Esq., of the Minnesota Attorney General's Office.

For the reasons discussed below, it is recommended that Petitioner's petition for writ of habeas corpus [Docket No. 1] be denied and dismissed with prejudice.

I.    **PROCEDURAL BACKGROUND**

The facts as described in State v. Christian, 2002 WL 31415382 at *1, 3 (Minn.App. 2002), are as follows: On June 30, 2000, two men were killed, and a third man wounded, during a robbery in a motel room in Austin, Minnesota. The 14-year-old nephew of one of the victims witnessed the crimes and called 911. Within 24 hours,

Petitioner, his brother Scot Christian, Vernon Powers, and Janea Wienand were arrested. Petitioner, Scot Christian and Vernon Powers were eventually indicted on two counts of first-degree premeditated murder, two counts of first-degree intentional felony murder, two counts of second-degree intentional murder, two counts of second-degree unintentional murder, and one count of first-degree assault.[1] The three men were tried jointly. Prior to trial, the two first-degree premeditated murder counts against Petitioner were dismissed.

In June 2001, Petitioner was found guilty by a Mower County jury of two counts of second-degree felony murder and first-degree assault. Petitioner was sentenced to three consecutive prison terms totaling 493 months and is currently serving that sentence at the Minnesota Correctional Facility in Stillwater, Minnesota.

Following his trial and conviction, Petitioner appealed to the Minnesota Court of Appeals, arguing: 1) the evidence against him was insufficient; 2) the district court erred in refusing to give his requested instruction on accomplice liability to the jury; 3) the district court abused its discretion when it determined that his prior convictions were admissible for impeachment purposes; 4) the court's consecutive sentencing unfairly exaggerated the criminality of his conduct; 5) insufficiency of the indictment against him; 6) improper joinder of Petitioner with co-defendants for trial; and 7) improper prosecutorial communication with a juror and absence of Petitioner from the hearing where the court questioned the juror about the propriety of the communication. The Court of Appeals affirmed the conviction. Christian, 2002 WL 31415382. Petitioner sought review of the Court of Appeals' decision, which was denied by the Minnesota Supreme Court on December 30, 2002.

---

[1] Janea Wienand negotiated a plea agreement and was not tried jointly with the other co-defendants.

2

Petitioner also filed two separate petitions for post-conviction relief, seeking vacation of his convictions and a new trial. The first petition for post-conviction relief was filed in November 2003, and claimed that Petitioner's trial counsel's assistance was ineffective because: 1) he failed to communicate to the state a plea agreement proposed by Petitioner; 2) he failed to call an expert witness in Petitioner's defense; and 3) he failed to ground certain issues under federal law when Petitioner requested that counsel do so. See Christian v. State, 2004 WL 2221614 at *1 (Minn.App. 2004). The post-conviction court denied relief, and Petitioner appealed the denial to the Minnesota Court of Appeals. The Court of Appeals affirmed the denial. Id. at *4. Petitioner sought review of the Court of Appeals' decision, which was denied by the Minnesota Supreme Court on December 22, 2004.

The second petition for post-conviction relief was filed in March 2005, and argued that 1) Petitioner was entitled to a new trial based on newly discovered evidence of exculpatory statements from his co-defendants; and 2) the district court improperly joined Petitioner and his co-defendants for trial. See Christian v. State, 2006 WL 852136 at *1 (Minn.App. 2006). The post-conviction court denied relief, and Petitioner appealed the denial to the Minnesota Court of Appeals. The Court of Appeals affirmed the denial of post-conviction relief. Id. at *3. Petitioner sought review of the Court of Appeals' decision, which was denied by the Minnesota Supreme Court on June 28, 2006.

On July 20, 2006, Petitioner filed his Petition for Habeas Corpus Relief in this Court. Petitioner stated two grounds for relief in his Petition: first, that the trial court abused its discretion in joining Petitioner with multiple defendants at trial; and second, that the trial court abused its discretion in failing to find ineffective assistance of counsel

where counsel failed to obey Petitioner's instructions to communicate plea proposals to the prosecution. Petition, ¶ 12. In the form of relief, Petitioner requested the Court vacate his conviction and remand his case for a new trial.

In response to Petitioner's application for a writ of habeas corpus, Respondent argued that Petitioner's first claim is procedurally barred because he failed to present the claim as a federal issue to the Minnesota Supreme Court, and that the second claim fails on the merits because the result reached by the Minnesota courts accords with United States Supreme Court precedent.[2]

## II.   DISCUSSION

### A.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners. Section 2254 of the AEDPA provides that a district court will entertain a petition for writ of habeas

---

[2] In response to Respondent's Answer, Petitioner filed a Memorandum in Support of Petition for Writ of Habeas Corpus. In this memorandum, Petitioner stated that he had presented seven issues in his petition for habeas corpus. Pet. Mem., p. 5. However, upon reading the original Petition for Writ of Habeas Corpus filed with the Court in this case, the Court finds that Petitioner only alleged the two grounds described above. See Petition, ¶ 12. Although Petitioner did list seven issues in response to Paragraph 9 of his Petition, which directs all Petitioners to list grounds raised on appeal from judgment of conviction, he only listed two grounds in Paragraph 12, which directed all Petitioners as follows:

> 12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

In his response to Paragraph 12, Petitioner then described information and supporting facts for Ground One and Ground Two. He made no mention of an additional five grounds, and offered no supporting information for an additional five grounds. The pages of the Petition are consecutive and none appear to be missing. The Court, therefore, has confined its discussion to the two grounds specifically presented by Petitioner in his petition.

corpus submitted by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

In addition, 28 U.S.C. § 2254 provides that a habeas corpus petition:

shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Court of Appeals for the Eighth Circuit has described the review under § 2254(d). Under the "contrary to" clause of § 2254(d)(1), the writ may be granted if the state court arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decided a case differently than the Supreme Court has on a set of materially indistinguishable facts. See Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (citing Williams v. Taylor, 529 U.S. 362 (2000)). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identified the correct governing legal principle, but unreasonably applied that principle to the facts of the prisoner's case. See Copeland, 232 F.3d at 973. It is not enough that the state court decision applied clearly established law erroneously, the application must also be unreasonable. Taylor, 529 U.S. at 411. The test is an objective one. Id. at 409.

Therefore, "[a] federal court may not grant a petition under 28 U.S.C. § 2254 unless the court concludes that the state court adjudication of the claim 'resulted in a

5

decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the [United States] Supreme Court . . . or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(d); Williams, 529 U.S. at 362). Under this standard, the federal court "must deny a writ – even if we disagree with the state court's decision – so long as that decision is reasonable in view of all the circumstances." May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) (citing Williams, 529 U.S. at 409-13).

### B. Petitioner's Claim of Improper Joinder

Petitioner's first ground for relief is that the trial court abused its discretion in joining him with his co-defendants for trial. Respondent argued that since Petitioner did not present this issue to the Minnesota Supreme Court as a federal claim, he is procedurally barred from bringing the claim in his federal habeas petition. This Court finds this claim is not procedurally barred.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991). "To avoid a procedural default, the habeas Petitioner must fairly present his claim to the state court, that is, he must 'present the same facts and legal theories to the state court that he later presents to the federal courts.'" Morris v. Norris, 83 F.3d 268, 270 (8th Cir. 1996) (quoting Jones v. Jerrison, 20 F.3d 849, 854 (8th Cir. 1994)). "A prisoner must 'fairly present' his claim in each appropriate state court…thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349 (2004) (quoting

6

Duncan v. Henry, 513 U.S.364, 365-366, 115 S.Ct. 887 (1995).

Respondent maintains that Petitioner did not alert the Minnesota Supreme Court to the federal nature of his joinder claim. In support, Respondent quoted Petitioner's Petition for Review of the Decision of Court of Appeals to the Minnesota Supreme Court, dated November 29, 2002, which made no mention of federal law or of the United States Constitution. However, three separate petitions for review were presented to the Minnesota Supreme Court on three different occasions – the petition for review of the Court of Appeals affirmation of his conviction, and two petitions for review of each of the Court of Appeals' affirmations of the denials for post-conviction relief. Petitioner's joinder challenge was presented in two of the three of those petitions for review – the November 29, 2002 addressed by Respondent, and the May 1, 2006 petitions for review.

Petitioner argued that he did present a federal claim in his May 1, 2006 petition for review, and that his claim was not procedurally defaulted because he specifically cited to two federal cases, Tifford v. Wainwright, 588 F.2d 954 (5th Cir. 1979), and Zafiro v. United States, 506 U.S. 534, 113 S.Ct. 933 (1993), in his petition for review of the second post-conviction relief denial dated May 1, 2006. Petitioner stated that these federal case citations were included "in his Petition for Review to the State Supreme Court, Appellate Court Case Number A05-1240." Pet. Mem. p. 8. However, the citations are not found within the body of that petition for review. Rather, these citations are located on page 12 of his brief to the Court of Appeals, and on page 3 of Petitioner's Memorandum of Law in support of his Motion for Post-Conviction Relief, which was filed with the state district court on March 31, 2005. See Appendix to Respondent's Memorandum in Support of Motion to Dismiss Petition for Writ of Habeas Corpus

7

("Resp. Appendix"), Ex. 18 (Petition for Review of Decision of Court of Appeals Case No. A05-1240 to the Minnesota Supreme Court, attaching Brief and Appendix to the Minnesota Court of Appeals at pp. A-16, 38.)

In Baldwin, the Supreme Court stated that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." 541 U.S. at 32. This is precisely the case here. Petitioner did not mention Tifford or Zafiro in the Petition for Review to the Minnesota Supreme Court. In order to locate Petitioner's federal claim based on his reliance on these cases, the Minnesota Supreme Court have to had to locate them in his memoranda to the district court or court of appeals, which were attached as an appendix to the Petition for Review. Therefore, under Baldwin, Petitioner's federal claim based on those two cases was not fairly presented to the Minnesota Supreme Court.

However, the Court notes that in the actual body of the same Petition for Review to the Minnesota Supreme Court, Petitioner referred several times to joinder violating his "right to due process of law" and "principles of due process." See Resp. Appendix, Ex. 18 (Petition for Review of Decision of Court of Appeals Case No. A05-1240, pp. 1-3). Due process is a constitutional concept, and the Court finds that in this case, Petitioner's reference to violation of his due process rights in conjunction with his claim that joinder was improper constituted sufficient presentation of a federal claim to the Minnesota Supreme Court. See Hood v. Helling, 141 F.3d 892, 896 (8th Cir. 1998) (Petitioner's constitutional claim found to be adequately presented where Petitioner made reference in his state supreme court brief to his due process right to a fair trial).

Petitioner's joinder claim is not procedurally barred and the Court will conduct a substantive review of the claim.

In his memorandum in support of his petition for habeas relief, Petitioner alleged that his joinder with his co-defendants for trial violated his Sixth Amendment rights under the U.S. Constitution to call witnesses in his defense, his right to a fair trial, and his right of due process. Pet. Mem., pp. 13-22. Petitioner made virtually the same argument on direct appeal of his conviction to the Minnesota Court of Appeals, (see Resp. Appendix, Ex. 2 (Appellant's Pro Se Supplemental Brief), pp. 11-19), where the appellate court concluded that joinder was proper. The Court of Appeals found that the defendants acted in concert with one another, and that separate trials would have required multiple appearances by witnesses, including an eyewitness who was only 14 years old at the time of the incident. Christian, 2002 WL 31415382 at *8. The Court of Appeals also noted that Petitioner did not identify any conflicting defenses or trial strategies between the defendants, that the district court instructed the jurors to consider each defendant separately, and that the verdict demonstrated that the jury found Petitioner responsible to a lesser degree than his co-defendants. Id.[3]

Petitioner again raised the joinder claim in his second petition for post-conviction relief. The post-conviction court summarily denied the petition because the issue had already been decided on direct appeal by the Court of Appeals, and Petitioner was procedurally barred from bringing up the argument again based on State v. Knaffla, 309 Minn. 246, 243 N.W.2d 737 (1976). Christian, 2006 WL 852136 at *3. Petitioner appealed the denial of post-conviction relief to the Court of Appeals, and the Court of

---

[3] While Petitioner was found guilty of two counts of second-degree unintentional felony murder and one count of first-degree assault his co-defendants were found guilty on all counts and sentenced to consecutive life terms. Christian, 2002 WL 31415382 at *3.

9

Appeals affirmed the district court for the following reasons:

> After unsuccessfully opposing joinder at trial, appellant raised an improper joinder claim upon his direct appeal in 2002. Christian, 2002 WL 31415382, at *8-*9. Appellant argued that joinder was improper and resulted in substantial prejudice to him. Id. This court considered that argument and rejected it. Id.
>
> A postconviction court "may summarily deny a petition when the issues raised in it have previously been decided by the court of appeals or the supreme court in the same case." Minn.Stat. § 590.04, subd. 3 (1998). The Minnesota Supreme Court has explained that "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." Knaffla, 309 Minn. at 252, 243 N.W.2d at 741. Because this court considered and rejected appellant's joinder argument upon his direct appeal, we conclude that the postconviction court did not abuse its discretion by holding that appellant was procedurally barred from raising that argument again.

Id.

"Regardless of the state law governing severance in state trials, this court will not grant relief to a habeas Petitioner on this issue unless he can establish that the failure to grant severance rendered the trial 'fundamentally unfair.'" Hollins v. Department of Corrections, State of Iowa, 969 F.2d 606, 608 (8th Cir. 1992) (quoting Johnson v. Dugger, 817 F.2d 726, 728 (11th Cir.1987)). In his memorandum in support of the habeas Petition, Petitioner argued that joinder rendered his trial fundamentally unfair because he was unable to procure exculpatory testimony from his co-defendants at a joint trial. Pet. Mem., pp. 13-22. According to Petitioner, if the defendants had not all been joined for trial, Scot Christian and Vernon Powers would have testified that Petitioner had no role in the planning of the robbery and had no knowledge of it. Id., p. 22. Relying on what he had characterized as newly discovered evidence that he had submitted in support of his second petition for post-conviction relief – affidavits from both Christian and Powers each of which stated that appellant was not aware of, and

10

did not plan, any of the criminal activities underlying his convictions[4] – Petitioner argued that the Court of Appeals in rejecting his improper joinder claim, failed to take into account this newly discovered evidence. Id., pp. 21-22.

Petitioner relies on Tifford v. Wainwright, which considered the following five factors to be considered when the exculpatory nature of a co-defendant's testimony is relied upon to establish a constitutional violation:

> (1) Does the movant intend or desire to have the codefendant testify? How must his intent be made known to the court, and to what extent must the court be satisfied that it is bona fide?
>
> (2) Will the projected testimony of the co-defendant be exculpatory in nature, and how significant must the effect be? How does the defendant show the nature of the projected testimony and its significance? Must he in some way validate the proposed testimony so as to give it some stamp of verity?
>
> (3) To what extent, and in what manner, must it be shown that if severance is granted there is likelihood that the codefendant will testify?
>
> (4) What are the demands of effective judicial administration and economy of judicial effort? Related to this is the matter of timeliness in raising the question of severance.
>
> (5) If a joint trial is held, how great is the probability that a codefendant will plead guilty at or immediately before trial and thereby prejudice the defendant, either by cross-defendant prejudice or by surprise as it relates to trial preparation?

588 F.2d at 956 (citing Byrd v. Wainwright, 428 F.2d 1017,1019-20 (5th Cir. 1970).

---

[4] The affidavit of Christian, signed and notarized on April 11, 2005, stated that Petitioner did not know of the robbery or help plan it, and that if Petitioner had a separate trial, the affiant would have testified and told the jury that Petitioner had nothing to do with the robbery and homicides. See Resp. Appendix, Ex. 18 (Petition for Review of Decision of Court of Appeals Case No. A05-1240 to the Minnesota Supreme Court, attaching Petitioner's Brief and Appendix to the Minnesota Court of Appeals, pp. A-24-25.) The affiant also stated that he was unable to testify because his constitutional right to remain silent was in conflict with Petitioner's right to compel testimony in his defense. Id., p. A-24. The affidavit of Vernon Powers, signed and notarized on May 10, 2005, stated that Petitioner was unaware of any illegal activity and had no knowledge of a planned robbery. Id., p. A-27.

After addressing these factors, the court in <u>Tifford</u> found that based on the existence of evidence that his co-defendants would have testified in the petitioner's favor if their trials were severed, the Petitioner in that case was improperly joined with his co-defendants. Petitioner likens <u>Tifford</u> to his own case and urges the Court to similarly decide that denial of severance rendered his trial fundamentally unfair.

However, a major distinction can be drawn between <u>Tifford</u> and Petitioner's case. In <u>Tifford</u>, the defendant presented exculpatory affidavits of his co-defendants at the time of his motion for severance, which was prior to his trial. The affidavits set forth specific exculpatory testimony that would only be available if the defendants were tried separately. In this case, Petitioner did not present the affidavits of his co-defendants until his second petition for post-conviction relief, almost 4 years after his trial and conviction. Thus, none of the above five factors set forth in <u>Byrd</u> and <u>Tifford</u> were known to the district court at the time of Petitioner's trial, and the trial court did not have an opportunity to utilize the information presented to the post-conviction court to determine whether it would have been fundamentally unfair to try Petitioner with his co-defendants at that time. Other than objecting to joinder and moving for severance, Petitioner did not make a showing of any of the five factors at the time of his trial.

"[A] defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." <u>Zafiro v. U.S.</u>, 506 U.S 534, 538, 113 S.Ct. 933, 937 (1993) (<u>citing</u> <u>Tifford</u>, 588 F.2d 954). However, it is not enough for a defendant to claim that he needs a separate trial in order to call a co-defendant as a witness. <u>United States v. Delpit</u>, 94 F.3d 1134, 1144 (8th Cir.1996). He must show that it is likely his co-defendant actually would testify and that this testimony would be exculpatory. <u>Id</u>. (<u>citing</u> <u>United States v. Anthony</u>, 565 F.2d 533, 538

12

(8th Cir.1977)). At the time of trial, there was no evidence that the co-defendants' exculpatory evidence would have been available if Petitioner were tried separately. To the contrary, the district court noted that the co-defendants had given no indication that they would testify that Petitioner had no involvement in the planning of the crime. See Resp. Appendix, Ex. 2 (District Court Omnibus Order dated December 28, 2000 appendixed to Petitioner's Pro Se Supplemental Brief to the Minnesota Court of Appeals, dated April 30, 2002). Because Petitioner did not show that it was likely his co-defendants actually would testify and that the testimony would be exculpatory, the trial court did not err in joining the defendants for trial.

Petitioner also claims that because his defense was antagonistic to the defenses of his co-defendants, his Sixth Amendment right to due process was violated, and consequently, his trial was fundamentally unfair. Pet. Mem., p. 18. "Mutually antagonistic defenses are those which force the jury to disbelieve the core of one defense in order to believe the core of the other." Hood, 141 F.3d at 892 (citing United States v. Gutberlet, 939 F.2d 643, 645-46 (8th Cir.1991). Petitioner stated that even though Christian and Powers were willing to testify that Petitioner was unaware of the robbery plans, to do so would have directly implicated themselves in the crimes. Pet. Mem., p. 18. Therefore, according to Petitioner, because the Fifth Amendment rights of his co-defendants conflicted with his Sixth Amendment right to call witnesses, the defenses of his co-defendants were irreconcilable with his own defense. Id.

As a preliminary matter, the Court notes that the co-defendants would have been entitled to assert their Fifth Amendment privileges at Petitioner's trial even if he had been tried separately. Testifying in a separate trial would not negate any self-incrimination – stating that Petitioner had no part in the planning of the robbery, whether

13

at a joint trial or at Petitioner's separate trial, could have had the same effect of admitting that they knew who was involved in planning the robbery regardless of the hearing in which that testimony was given. Any hypothetical testimony given at Petitioner's separate trial could still be used against the co-defendants in their own trials.

Furthermore, antagonistic defenses did not exist in Petitioner's case – Petitioner's defense was that he did not know that the crimes were going to occur, and that he took no part in the planning of the crimes. Although the defenses of the co-defendants are unknown to this Court and are not a part of the appellate record, there is also no record that the defenses of his co-defendants conflicted with Petitioner's position. Petitioner has not made the argument that the jury would have to disbelieve Petitioner's defense in order to believe his co-defendants, or vice-versa. The jury could have accepted Petitioner's defense and acquitted him, and still believed that his co-defendants committed the crimes for which they had been charged.

As discussed above, Petitioner had to show that it was likely his co-defendant actually would testify and that this testimony would have been exculpatory in order to mandate separate trials under this argument. He did not make such a showing to the trial court. See U.S. v. Blaylock, 421 F.3d 758, 767 (8th Cir. 2005) (absent firm representation that co-defendant would testify and the testimony would be exculpatory, defendant was not deprived of his Sixth Amendment right to compulsory process where his co-defendant invoked his Fifth Amendment privilege against self-incrimination and refused to testify at joint trial).

In summary, Petitioner has not shown that his joinder with his co-defendants for trial rendered his trial fundamentally unfair. The affidavits of Christian and Powers

14

stating that Petitioner had no role in the planning of the robbery or homicides were not presented to the district court at the time of trial. Based upon the information that was available to it at the time, the district court was reasonable in its decision to join the defendants for trial. The decision was not contrary to established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Therefore, the Court concludes that the trial court did not abuse its discretion in joining Petitioner and his co-defendants for trial.

### C.  Ineffective Assistance of Counsel

Petitioner's second ground for relief is that the trial court abused its discretion in failing to find ineffective assistance of counsel where counsel failed to obey Petitioner's instructions to communicate plea proposals to the prosecution. In opposition, the State contended that Petitioner could not establish that he was prejudiced by any alleged deficient performance of counsel.

Petitioner claimed that he instructed his attorney to offer a plea agreement to the prosecution whereby he would serve 20 years in prison, and that his attorney failed to do so. The Court of Appeals noted that the record did not show whether Petitioner instructed his trial counsel to propose a 20-year sentence in exchange for his testimony or if his counsel failed to communicate such an offer to the State. Christian, 2004 WL 2221614 at *2. The record does reflect that during the trial Petitioner proposed a 10-year sentence in exchange for his testimony against his co-defendants, and that the State continued plea negotiations during the trial, but Petitioner would not agree to a sentence in excess of ten years. Id. The State rejected this offer, and at sentencing, counsel for the State told the Court that he would have entertained a plea agreement with a proposed sentence of longer than 10 years. Id.

15

In its analysis of Petitioner's ineffective assistance claim, the Court of Appeals correctly identified Strickland v. Washington as the proper standard to be applied. Christian, 2004 WL 2221614 at *2.  "To prove ineffective assistance of trial counsel, Christian must 'affirmatively prove that his counsel's representation 'fell below an objective standard of reasonableness' and 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Id. (quoting Gates v. State, 398 N.W.2d 558, 561 (Minn. 1987) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068 (1984)). The Court of Appeals found that Petitioner could not show that his trial counsel's alleged error affected the outcome of the proceeding.  Christian, 2004 WL 2221614 at *2-3.

Petitioner contended that Court of Appeal's decision was contrary to or misapplied with the Supreme Court's holding in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984).  Pet. Mem., pp. 9-13, 22-23.  In addition, Petitioner argued that denying his ineffective assistance of counsel claim, the Court of Appeals misinterpreted the meaning of "proceeding" as set forth in Strickland, and addressed only the consequences of ineffective counsel in regards to the trial, and not in regards to the sentencing stage.  Pet. Mem., pp. 11-13, 23.  In failing to address how the error affected the result of his sentencing proceeding, Petitioner maintained that the Court of Appeals unreasonably applied Strickland to the facts of Petitioner's case.  Id.

As a preliminary matter, this Court observes that Petitioner never claimed that he had ineffective assistance of counsel at his sentencing, only that his counsel's failure to offer a 20-year sentence negotiation to the prosecution at or before trial affected the subsequent sentence that he received.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of

the particular case, viewed <u>as of the time of counsel's conduct</u>." <u>Strickland</u>, 466 U.S. at 690 (emphasis added). Presented with Petitioner's argument that his counsel was ineffective in failing to relay a plea proposal to the prosecution, the Court of Appeals correctly analyzed any alleged error with respect to the time when the alleged error occurred – before or during Petitioner's trial.[5] Accordingly, because Petitioner never claimed that ineffective assistance of counsel occurred during his sentencing proceeding, the Court of Appeals properly evaluated <u>Strickland</u> in conjunction with the result of Petitioner's trial. "Under AEDPA, [a Petitioner] must establish that the state court 'applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.'" <u>Ringo v. Roper</u>, 472 F.3d 1001, 1003 (8th Cir. 2007) (<u>quoting</u> <u>Bell v. Cone</u>, 535 U.S. 685, 698-99, 122 S.Ct. 1843 (2002)). Given that Petitioner never argued that he had ineffective assistance of counsel at his sentencing, this Court finds that the Petitioner has not met this burden.

As to the balance of his ineffective of assistance of counsel claim, the post-conviction court, as well as the Court of Appeals, found that even if the record supported Petitioner's contention that he proposed a 20-year sentence and his counsel failed to communicate it, Petitioner would still not be able to show that his counsel's alleged error affected the outcome of the trial. Petitioner argued that the district court and the Court of Appeals imposed an unachievable standard of proof when they found that "to show that counsel's alleged error would have affected the outcome of the trial, Christian would have to show (1) that a plea agreement would have been reached, (2) that the court would have accepted the plea agreement, and (3) that Christian would

---

[5] Petitioner stated in his memorandum that he requested counsel to attempt to arrange a plea agreement prior to trial. Pet. Mem. p. 12. As this proposal was in exchange for testimony at trial, it is clear that it was not made after Petitioner's trial.

have honored the plea agreement by testifying truthfully against the co-defendants, one of whom was his brother." Pet. Mem., pp. 10-11 citing Christian, 2004 WL 2221614 at *2.  However, even assuming that Petitioner did instruct his attorney to offer a plea proposal of 20 years in prison, Petitioner offered nothing to the district court to show that the State and the trial court would have accepted such a plea negotiation.  To the contrary, the State only acknowledged that they would have "entertained" a proposal of more than ten years in prison, and the post-conviction court stated that it would not have accepted a plea agreement that required Petitioner to be sentenced to only 20 years.  Christian, 2004 WL 2221614 at *2.  The factors identified by the post-conviction court and Court of Appeals constitute the basic conditions precedent to all plea agreements in any criminal proceeding.  Id. citing to State v. Andrews, 282 Minn. 386, 391 n. 4, 165 N.W.2d 528, 532 n. 4 (1969) ("It is well to note that the prosecutor's participation is discretionary. He has no duty to initiate plea bargaining, and, . . . has no duty to make a bargain."); see also Minn. R. Crim. P. 15.04 (setting forth the conditions precedent to the acceptance of a plea and the discretion of the prosecutor and court to engage in plea discussions and to accept a plea.)  The Court does not find that the Court of Appeals' determination was contrary to or a misapplication of federal law, nor an unreasonable determination of the facts presented in the state court proceeding.

In summary, in light of the evidence in the record and federal law, this Court finds that the conclusions of the trial court and the appellate court that Petitioner was properly joined with his co-defendants for trial and that Petitioner did not establish ineffective assistance of counsel, are neither contrary to or a misapplication of federal law, nor an unreasonable determination of the facts presented in the state court proceeding.  For

these reasons, this Court recommends that the petition for writ of habeas corpus be denied with prejudice.

### III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Docket No. 1] be **DENIED** and this action be **DISMISSED WITH PREJUDICE**.

Dated:  January 24, 2008

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

### NOTICE

Under D. Minn. Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **February 11, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief with ten days after service thereof.  All briefs filed under this rule shall be limited to ten pages.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.